No. 23-11065

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

SOUTHWEST AIRLINES PILOTS ASSOCIATION,

Plaintiff-Appellant

v.

SOUTHWEST AIRLINES COMPANY,

Defendant-Appellee

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
3:21-CV-2608

HONORABLE BARBARA M. G. LYNN, U.S. DISTRICT JUDGE

---

**REPLY BRIEF OF APPELLANT
SOUTHWEST AIRLINES PILOTS ASSOCIATION**

---

Hal K. Gillespie
hkg@gillespiesanford.com
Joseph H. Gillespie
joe@gillespiesanford.com
James D. Sanford
jim@gillespiesanford.com

GILLESPIE SANFORD LLP
4803 Gaston Avenue
Dallas, Texas 75246
Phone: (214) 800-5111

Attorneys for Plaintiff-Appellant Southwest Airlines Pilots Association

# **Table Of Contents**

Introduction ......................................................................................... 1

Argument ............................................................................................. 3

    I.    Southwest is wrong about forfeiture: SWAPA argued below—consistently and repeatedly—that this is not an RLA "minor" dispute ........................................................... 3

    II.   Southwest dismisses the RLA's plain language in favor of a heightened pleading requirement and, in doing so, seeks to vitiate Fifth Circuit union animus precedent .................................. 8

    III.  Southwest's facial-versus-factual attack argument contradicts its own pleadings and evidence, the record below, and the district court's opinions ............................................... 14

        A. The district court failed to take SWAPA's well-plead facts as true, and instead weighed and ignored the facts establishing jurisdiction ......................................... 15

        B. Southwest mounts a factual attack relying on disputed facts to contest jurisdiction .......................................... 17

    IV.  Southwest ignores *Pickett* and cannot overcome the district court's conclusion that the jurisdiction and merit facts are intertwined ........................................................ 20

    V.   Southwest's rhetoric is contrary to decades of labor law and the specific history of union animus cases .................................. 22

Conclusion .......................................................................................... 26

Certificate Of Service .......................................................................... 27

Certificate Of Compliance ................................................................... 28

# Table Of Authorities

**CASES**                                                                                       **Page(s)**

*Amtrak v. Int'l Ass'n of Mach. & Aerospace Workers*,
   915 F.2d 43 (1st Cir. 1990) ............................................................ 9

*Arbaugh v. Y & H Corp.*,
   546 U.S. 500 (2006) ..................................................................... 21

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................... 22

*Ass'n of Professional Flight Attendants v. Am. Airlines, Inc.*,
   843 F2d 209 (5th Cir. 1988) ......................................................... 13

*Atchison, T.& S.F.R. Co. v. Buell*,
   480 U.S. 557 (1987) ....................................................................... 6

*Bell Atlantic v. Twombly*,
   550 U.S. 544 (2007) ..................................................................... 22

*Bhd. of Locomotive Eng'rs & Trainmen v. Union Pac. R.R. Co.*,
   31 F.4th 337 (5th Cir. 2022) .................................................. *passim*

*Bhd. of R. R. Trainmen v. Cent. of Georgia Ry. Co.*,
   305 F.2d 605 (5th Cir. 1962) ................................................. *passim*

*Bhd. of Ry. Carmen v. Atchison, T. & S. F. R. Co.*,
   894 F.2d 1463 (5th Cir. 1990) ........................................... 9, 10, 20

*Brown v. Ill. Cent. R.R. Co.*,
   254 F.3d 654 (7th Cir. 2001) ......................................................... 4

*CareFlite v. Office & Prof'l Employees Int'l Union*,
   612 F.3d 314 (5th Cir. 2010) ....................................................... 14

*Carmona v. Sw. Airlines Co.*,
   536 F.3d 344 (5th Cir. 2008) ................................................. *passim*

*Carmona v. Sw. Airlines Co.*,
    604 F.3d 848 (5th Cir. 2010) .............................................................. 25

*Conrad v. Delta Airlines, Inc.*,
    494 F.2d 914 (7th Cir. 1974) ........................................................ 19, 23

*Consol. Rail Corp. v. Ry. Labor Exec. Ass'n*,
    491 U.S. 299 (1989) ...................................................................... 10, 11

*DeGracia v. Sw. Airlines Co.*,
    No. 3:16-cv-0788-D, 2016 U.S. Dist. LEXIS 164048 (N.D. Tex.
    2016) ................................................................................................ *passim*

*Fennessy v. Southwest Airlines*,
    91 F.3d 1359 (9th Cir. 1996) ...................................................... 1, 6, 7

*Gee v. Principi*,
    289 F.3d 344 (5th Cir. 2002) ................................................................ 17

*Hamilton v. Dallas County*,
    79 F.4th 494 (5th Cir. 2023) ...................................................... 8, 9, 24

*Lingle v. Norge Div. of Magic Chef, Inc.*,
    486 U.S. 399 (1988) ............................................................... 5, 6, 7, 12

*Martinelli v. Hearst Newspapers. Martinelli v. Hearst Newspapers, L.L.C.*,
    65 F.4th 231 (5th Cir. 2023) ................................................................ 24

*Menchaca v. Chrysler Credit Corp.*,
    613 F.2d 507 (5th Cir. 1980) ................................................................ 15

*Muldrow v. City of St. Louis*,
    No. 22-193, __ U.S. __ (2024) ............................................................ 24

*NLRB v. Trans. Mgmt. Corp.*,
    462 U.S. 393 (1936) ................................................................................ 2

*Pickett v. Tex. Tech Univ. Health Scis. Ctr.*,
    37 F.4th 1013 (5th Cir. 2022) ................................................. 15, 20, 21

*Ramming v. United States*,
    281 F.3d 158 (5th Cir. 2001) ................................................................ 21

*Robinson v. Shell Oil Co.*,
  519 U.S. 337 (1997) ........................................................................................19, 20

*Roscello v. Southwest Airlines Co.*,
  726 F.2d 217 (5th Cir. 1984) ....................................................................... 9, 23

*Shirley v. Chrysler First, Inc.*,
  970 F.2d 43 (5th Cir. 1992) ............................................................................. 17

*St. Mary's Honor v. Hicks*,
  509 U.S. 502 (1993) ......................................................................................... 21

*Thornbrough v. Columbus & G.R. Co.*,
  760 F.2d 633 (5th Cir. 1985) .......................................................................... 21

## STATUTES

United States Code
  45 U.S.C. § 152 .................................................................................. 10, 11, 12

## RULES

Federal Rules of Appellate Procedure
  FED. R. APP. P. 32(a)(5) ................................................................................ 28
  FED. R. APP. P. 32(a)(6) ................................................................................ 28
  FED. R. APP. P. 32(a)(7)(B) ........................................................................... 28

Federal Rules of Civil Procedure
  FED. R. CIV. P. 12(b)(6) ..................................................................... 15, 20, 22
  FED. R. CIV. P. 56 ........................................................................................... 15

Fifth Circuit Rules
  Fifth Circuit Rule 25.2.1 ................................................................................ 28
  Fifth Circuit Rule 25.2.13 .............................................................................. 28

# **Introduction**

Southwest employs a string of descriptors meant more to alarm than to analyze. Southwest characterizes the union's position as "radical" and "hyperbol[ic]." [Southwest Br. at 30, 33, 40] It even implies an improper "end run" to avoid the parties' system board process. [*Id.* at 33] While the response contains a surplus of accusations, Southwest's arguments cannot be squared with the record below. What's more, Southwest's arguments would require this Court to overrule or vitiate at least two earlier panel opinions and disregard decisions involving *Southwest* that support the union.

There is nothing radical about SWAPA's RLA animus allegations. SWAPA alleged a years-long effort by Southwest to undercut the union's efforts to organize Check Pilots. (ROA.16) This period overlapped with "heated Section 6 negotiations…." (ROA.52, FAC ¶ 24)[1] In June 2018, the company forbid Check Pilots from participating in union advocacy and organizing. (ROA.50-51, FAC ¶21) The new written policy declared that Check Pilots were "*prohibited* from participating in SWAPA-controlled committees and from serving as an officer in the SWAPA organization." (*Id.* (emphasis added)) Only nine months later a Senior Director restated the company's anti-union stance to the first Co-Chairman of

---

[1] "FAC" refers to SWAPA's *First Amended Complaint* (Dkt. 7/ROA.43) and "TAC" to the *Third Amended Complaint* (Dkt. 35/ROA.665).

SWAPA's Committee—Captain Tim Roebling, known as an outspoken advocate for high standards. (ROA.53-54, FAC ¶¶ 26-27, 29-30; *see also* ROA.68, verifying FAC) The management threat was direct and unambiguous: "if you take the SWAPA position you will be stripped of your quals." (*Id.*) Southwest made good on that threat in March 2021 by terminating Roebling's "quals". (ROA.55/FAC ¶ 33; *see also* ROA.54/FAC ¶ 32 (noting earlier retaliation,)) Southwest then retaliated further mid-way through this lawsuit by rejecting Roebling's efforts to become a Check Pilot at a time the company was hiring a large class of Check Pilots. (ROA. 681-89/TAC ¶¶44-55)

Read as a whole, SWAPA brings a conventional union animus retaliation claim outlawed under federal law since 1936, recognized in the Fifth Circuit since at least 1962, and reaffirmed by this Court two years ago. *See NLRB v. Trans. Mgmt. Corp.*, 462 U.S. 393, 398 (1983)(noting that the NLRB recognized antiunion animus as an unfair labor practice in 1936, citing *Consumers Research, Inc.*, 2 NLRB 57, 73 (1936)); *Bhd. of R. R. Trainmen v. Cent. of Georgia Ry. Co.* ("*Central of Georgia*"), 305 F.2d 605, 609 (5th Cir. 1962); and *Bhd. of Locomotive Eng'rs & Trainmen v. Union Pac. R.R. Co.*, 31 F.4th 337 (5th Cir. 2022). There is nothing "radical" about the union seeking a federal court remedy to the company's chilling of union organizing and advocacy. Rather, a showing of the carrier's anti-union animus

means the "public interest, if nothing else, would make injunctive relief appropriate if not compelled." *Central of Georgia*, 305 F.2d at 609.

**Argument**

## I.     Southwest is wrong about forfeiture: SWAPA argued below—consistently and repeatedly—that this is not an RLA "minor" dispute

Southwest contends that SWAPA forfeited a central argument supporting federal jurisdiction—that this case is not a "minor" dispute. [Southwest Br. at 24] According to Southwest, the union supposedly "did not challenge the existence of a minor dispute" in the district court. [*Id.*] This bald claim contradicts the record. A simple word search confirms that SWAPA repeatedly made this point, including in response to the first motion to dismiss (ROA.406 and ROA.417-18), again in response to the second motion to dismiss (ROA.1034, 1040 and 1044-45), again in moving for reconsideration (ROA.1098), and finally in reply on the motion for reconsideration (ROA.1130-31). Indeed, SWAPA devoted entire sections of briefing to distinguishing these statutory claims from minor disputes. (ROA.406 ("B.  This Is a Statutory Violation Case—Not a "Minor" or "Major" Dispute—and Southwest's RLA Violations Are Squarely Within the Court's Jurisdiction"))

Ironically, Southwest later argues that two cases cited by SWAPA to the district court, for the same argument Southwest now claims forfeited, *Carmona* and *DeGracia*, are "inapposite" because they involved Title VII and ADA claims that

3

are generally not precluded by the RLA.  [Southwest Br. at 26, n.3]  Southwest's argument is incorrect.  Both *Carmona* and *DeGracia* cut squarely against Southwest.

In *Carmona*, Southwest "insisted" that the RLA preempted Carmona's Title VII and ADA claims because his termination was supported by the CBA and that the suit was a "minor" dispute (indeed, it was one which he had already grieved through the arbitration system).  *Carmona v. Sw. Airlines Co.*, 536 F.3d 344, 346-48 (5th Cir. 2008).  The Fifth Circuit disagreed and held that, "[n]otwithstanding this preference for arbitration, we are convinced that Carmona's claims do not require interpretation of the CBA, only reference to it."  *Id.* at 351. As in *Carmona*, the union's claims do not require CBA interpretation. *Id.*; *see also Brown v. Ill. Cent. R.R. Co.*, 254 F.3d 654, 668 (7th Cir. 2001)(explaining that employers "cannot ensure preclusion … merely by asserting certain CBA-based defenses to what is essentially a non-CBA-based claim….").

Echoing its arguments in *Carmona*, Southwest argued in *DeGracia v. Southwest Airlines Company* that "DeGracia's claims are artfully pleaded to circumvent the procedures set forth in the RLA… [and] are nothing more than a collateral attack on the SBOA decision."[2] *DeGracia v. Sw. Airlines Co.*, No. 3:16-cv-0788-D, 2016 U.S. Dist. LEXIS 164048, at *4-5 (N.D. Tex. 2016).  Judge

---

[2] "SBOA" stands for Systems Board of Adjustment and is the same system of arbitration that Southwest argues for in this case.

Fitzwater disagreed, relying on *Carmona* and *Hawaiian* airlines in determining that a case involving a statutory claim that references a CBA without being dependent on it is not preempted. *Id.* at **7-12. Contrary to Southwest's claim, neither *DeGracia* nor *Carmona*, hinged upon the underlying statutory rights. SWAPA briefed these issues to the district court here, including discussing the on-point Supreme Court upon which *Carmona* and *DeGracia* were based, *Hawaiian Airlines*, 512 U.S. 246 (1994) and *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399 (1988). (ROA.417, 552, 1045, 1098, 1130)

Southwest banishes *Carmona* to a single footnote. [Southwest Br. at 26, n.3] It gives even shorter shrift to the Supreme Court's *Hawaiian Airlines v. Norris* decision, failing to mention it at all. *Hawaiian Airlines* held that the RLA preempts state-law claims only if the claim requires interpretation of a collective-bargaining agreement (the so-called *Lingle* standard). *Hawaiian Airlines*, 512 U.S. at 263 (citing *Lingle*, 486 U.S. at 408-10) SWAPA briefed *Hawaiian Airlines* and *Lingle* in the opening brief, just as it did below. (ROA.417, 546, 552, 1045, 1098, and 1130) [SWAPA Br. 18, 34, 54]

These preemption and preclusion cases demonstrate that this is not a "minor" dispute because the claims derive from substantive statutory rights rather than the parties' contract. *Hawaiian Airlines* held that "the RLA's mechanism for resolving minor disputes does not pre-empt causes of action to enforce rights that are

independent of the CBA." *BLET*, 31 F.4th at 345 (quoting *Hawaiian Airlines*, 512 U.S. at 256). In doing so, the Supreme Court relied on its earlier decision in *Lingle* holding that federal labor law (namely, the Labor Management Relations Act) only preempts state-law rights when application of state law requires interpretation of a collective-bargaining agreement.

Hawaiian Airlines *and* Lingle addressed federal *preemption* of state-law claims. But the Supreme Court clarified that the same logic and "force" applies to RLA *preclusion* of federal claims. *Hawaiian Airlines*, 512 U.S. at 259, n. 6. *Hawaiian Airlines* cited *Atchison, T.& S.F.R. Co. v. Buell*, which held that the RLA does not preclude injury claims under the Federal Employers' Liability Act (FELA). *Atchison, T.& S.F.R. Co. v. Buell*, 480 U.S. 557, 564-65 (1987). Here, the district found that the RLA's minor dispute mechanism precluded RLA animus claims. This was error because SWAPA's claims are "independent of the CBA." *BLET*, 31 F.4th at 345 (internal quotation omitted). SWAPA's claim to federal jurisdiction is a straight-forward application of preclusion decisions like *Lingle*, *Hawaiian Airlines,* and *Buell*.

Southwest also ignores an RLA preclusion case rejecting its own "minor" dispute arguments. This Court cited *Fennessy v. Southwest Airlines*, 91 F.3d 1359 (9th Cir. 1996), two years ago in *BLET*. 31 F.4th at 344, 345, and 347. *Fennessy* involved an RLA retaliation claim seeking to enforce RLA rights in federal court.

The Ninth Circuit concluded that there was no preclusion despite the plaintiff having already filed—and lost—an arbitration related to the termination. *Fennessy*, 91 F.3d at 1361. Following *Hawaiian Airlines*, the Ninth Circuit held that Fennessy had a cause of action for RLA retaliation that was not a minor dispute. *Id.* at 1365. That Southwest says nothing about *Fennessy* is telling. SWAPA briefed *BLET* repeatedly and provided the *BLET* opinion to the district court. (ROA.540, 542). SWAPA also briefed *Fennessy* to the district court (ROA.1045 and 1098), and then again to this Court (in the opening brief at pages 20 and 34).

Additionally, Southwest incorrectly argues that the underlying dispute in this case "could be resolved under Section 2.O.1. of the CBA, which prohibits any pilot from being "interfered with, restrained, coerced or discriminated against by the Company" due to their SWAPA membership. ROA.170 (CBA § 2.O.1)." [Southwest Br. 26] This contradicts *Hawaiian Airlines*, *Lingle*, *Carmona*, *DeGracia*, and *Fennessy*, which all articulate the distinction between a CBA that is referenced versus an underlying statutory right. Furthermore, Southwest's argument turns a blind eye to the very next sentence of the CBA, § 2.O.2: "No employee covered by this Agreement shall be discriminated against because of race, color, religion, national origin, age, gender identity, sexual orientation, pregnancy, marital status, disability or veteran status." (ROA.170) Under Southwest's faulty argument, this provision of the CBA would have precluded Title VII and ADA rights like those in

*Carmona* and preempted the state-law discrimination rights in *DeGracia*. It would have allowed Southwest, merely because it is subject to the RLA, to contract around statutory rights being enforced in federal courts. Statutory rights can neither be created nor defined by a parties' contract, and "but for the general jurisdiction of the federal courts there would be no remedy to enforce the statutory commands which Congress has written into the Railway Labor Act." *BLET*, 31 F.4th at 345 (citing *Central of Georgia*, 305 F.2d at 607-08, and *Switchmen's Union of N. Am. v. Nat'l Mediation Bd.*, 320 U.S. 297, 300 (1943)). As argued below, this case does not involve a "minor" dispute under the RLA. The district erred in rejecting jurisdiction because of a non-existent minor dispute.

## II.   Southwest dismisses the RLA's plain language in favor of a heightened pleading requirement and, in doing so, seeks to vitiate Fifth Circuit union animus precedent

Southwest does not address how the RLA's plain language and broad prohibitions against "any" employer interference, coercion, or influence comport with the district court's restrictive reading. (SWAPA Br. 21-23) Southwest's failure to address the statutory language is particularly problematic since only two years ago the *BLET* panel cited this broad remedial language. *See BLET*, 31 F.4th at 342. Likewise, Southwest says nothing about *Hamilton v. Dallas County*, 79 F.4th 494, 499 (5th Cir. 2023)(*en banc*), in which this Court affirmed that broad statutory

language must be followed. *Id.* at 501. Absent "persuasive indications to the contrary, [courts] presume Congress says what it means and means what it says." *Id.*

Southwest also does not address this Court's holding in *BLET* that the animus exception to the RLA's "major" or "minor" paradigm encompasses "more *clandestine* attempts to punish employees for their union associations." *BLET*, 31 F.4th at 342 (emphasis added). Indirect or "clandestine" retaliation can include, for example, suspicious timing and "significant length of tenure as an employee without reprimands." *Roscello v. Southwest Airlines Co.*, 726 F.2d 217, 222 (5th Cir. 1984). SWAPA alleged—and supplied evidence of—such circumstantial evidence.

Instead, Southwest embraces the trial court's error in insisting that there are "only two exceptional circumstances" for federal-court jurisdiction.[3] [Southwest Br. at 18]  First, Southwest argues that the CBA's arbitration procedure must be "unavailable or that engaging in this procedure would inflict irreparable injury of such a magnitude to render a decision in SWAPA's favor virtually meaningless." (Southwest Br. 18, citing to ROA.657)

The district court relied on footnote 10 in *Bhd. of Ry. Carmen v. Atchison, T. & S. F. R. Co.*, 894 F.2d 1463, 1468 n.10 (5th Cir. 1990). *Atchison*, unlike this case,

---

[3] Despite the *Atchison* footnote describing the "two types of special circumstances" in which federal courts have jurisdiction under the RLA, courts have recognized various others, such as mere "discrimination or coercion." *See, e.g.*, *Amtrak v. Int'l Ass'n of Mach. & Aerospace Workers*, 915 F.2d 43, 51 (1st Cir. 1990).

involved a minor dispute. *Id.* Notably, *Atchison* was not a union animus claim under § 152, Third and Fourth, but rather a dispute over a "voluntary retirement" program brought under § 152, Seventh. *See* 45 U.S.C. § 152, Seventh (stating that "[n]o carrier … shall change the rates of pay, rules, or working conditions of its employees…except [as prescribed in Section 6]."). *Atchison* was a straight-forward application of *Conrail*'s "arguable basis" test. There was no allegation of animus or retaliation but rather a dispute over whether the CBA permitted the railroad's buy-out program. Whatever *Atchison* might say about the scope of § 152, Third and Fourth claims is therefore dictum.

*Conrail* itself is no more helpful to Southwest than *Atchison*. Like *Atchison*, but unlike the present case, *Conrail* involved no animus, discrimination, or coercion. *Consol. Rail Corp. v. Ry. Labor Exec. Ass'n*, 491 U.S. 299 (1989)("*Conrail*"). Justice Blackmun's majority opinion makes that clear in the question presented: "whether Conrail's addition of a drug screen to the urinalysis component of its required periodic and return-to-duty medical examinations gives rise to a 'major' or 'minor' dispute under the RLA." *Id. Conrail* turned on the parties' past practice; in other words, whether the CBA *permitted* the new testing program. Here, there is no dispute that Southwest *can* in theory remove a Check Pilot; rather, the issue is whether the company *did so* for an *unlawful reason*. *See Carmona*, 536 F.3d at 349 (distinguishing *Conrail*). *Conrail*'s lack of application to this case is explained by

*Hawaiian Airlines*, which noted that *Conrail's* "arguable justification" standard is meant for "policing the line between major and minor disputes." *Hawaiian Airlines*, 512 U.S. at 265. Thus, *Conrail* does not answer whether SWAPA has plead a plausible union animus claim under § 152, Third and Fourth.

Referring to the first *Atchison* exception, Southwest incorrectly argues that, "SWAPA does not claim that this exception applies in this case" and that SWAPA's grievance "included an allegation of discrimination based on Captain Roebling's prior union activities." [Southwest Br. 27 (citing ROA.125)]  But that is not remotely what SWAPA argued below.  SWAPA argued that this case does not "involve interpretation of the CBA, but rather the Union's statutory claim under the RLA that the Company is attempting to weaken or destroy the union." (ROA.417) The union also argued that "Southwest's argument that Roebling's CBA-based grievance precludes the Union's statutory claims would mean that SWAPA's statutory claims – which are outside the authority of any RLA arbitration because they are not based upon any term within the CBA – are unenforceable." (*Id.*)

Because the union's RLA rights under 45 U.S.C. § 152, Third and Fourth, are statutory—and not grounded in the CBA—there would be no effective remedy of those rights before an arbitrator (who would lack power to grant full relief). Southwest's claim about the first *Atchison* circumstance—that "SWAPA does not

11

claim that this exception applies in this case" [Southwest Br. 27]—is as mistaken as its forfeiture argument. The record flatly contradicts Southwest.

Furthermore, Southwest's claim that the grievance "included an allegation of discrimination based on Captain Roebling's prior union activities" is incorrect. [Southwest Br. 26 (citing ROA.125)] SWAPA's principal brief states that the June 1, 2021 grievance addressed only Southwest's CBA violations. [SWAPA Br. 8, ROA.125] The grievance included no allegation of RLA retaliation, interference, or anti-union animus and sought no remedy for harm to the union or its organizing and advocacy efforts. *Id*. Rather, Captain Roebling is similarly situated to the grievant in *Central of Georgia*, who had both personal contractual claims (via the Railway Board of Adjustment) and statutory claims (via federal court). *Id*. (citing *Central of Georgia*, 305 F.2d at 609).

This issue was also briefed, at length, to the district court. (ROA.411-13, 417, 439, 480-1, 535-36). SWAPA's CBA-focused grievance is similar to the grievances in *Hawaiian Airlines, Lingle*, *Carmona*, and *DeGracia*. Each utilized the CBA grievance or arbitration process regarding their CBA rights, yet retained rights under federal or state law. *See Hawaiian Airlines,* 512 U.S. at 249; *Lingle*, 486 U.S. at 401; *Carmona*, 536 F.3d at 346; *DeGracia*, 2016 U.S. Dist. LEXIS 164048 at *2.

The second circumstance referenced in *Atchison* is the union animus exception discussed extensively in SWAPA's briefing below and on appeal.

[SWAPA Br. 19-21 and 27-35]  Southwest claims that animus cases "require[] a showing of anti-union discrimination or coercion that threatens to break down "the essential framework for bargaining between management and the union." [Southwest Br. 18 (citing *Ass'n of Professional Flight Attendants v. Am. Airlines, Inc.*, 843 F.2d 209, 211 (5th Cir. 1988))]  Southwest also argues the standard requires "actions taken by a carrier for the purpose of weakening or destroying a union." [Southwest Br. 27 (citing *Atchison*, 894 F.2d at 1468, n. 10, and *Central of Georgia*, 305 F.2d at 608-09)]  To be sure, those are *some* of the ways to plead a union animus case under § 152, Third and Fourth.  But this Circuit's precedents are clear that such extensive harm to union organizing efforts—in which the union's very existence is threatened—is not required. Carrier efforts to interfere, coerce, or restrain the union and "more clandestine attempts to punish employees for their union associations" suffice.  *See BLET*, 31 F.4th at 342.

The dictum in *Ass'n of Professional Flight Attendants* is inapplicable here. That case focused on the difference between major and minor disputes, and only touched on RLA retaliation in one sentence.  [SWAPA Br. 31 (citing *Ass'n of Professional Flight Attendants* 843 F.2d at 211)]  Furthermore, *BLET* addressed *Ass'n of Professional Flight Attendants* yet still concluded that "the animus exception encompasses direct attacks on the union, as well as more clandestine attempts to punish employees for their union associations."  *BLET*, 31 F.4th at 342.

In support of a heightened RLA standard, Southwest cites other circuits, stating that RLA animus and interference cases are "generally" restricted to "pre-certification" disputes. [Southwest Br. 22, 32] On the one hand, "generally" does not mean "always" or "exclusively." *Hawaiian Airlines* was clear that the RLA's minor-dispute mechanism "does not apply to all disputes between an employer and its employees, or even to all non-major disputes between an employer and its employees." *See CareFlite v. Office & Prof'l Employees Int'l Union*, 612 F.3d 314, 320-21 (5th Cir. 2010). On the other, Southwest's "pre-certification" disputes argument asks this Court to overrule *BLET*'s holding that, "[f]ederal courts … have jurisdiction over *post*-certification disputes alleging that railroad conduct motivated by antiunion animus is interfering with the employees' 'choice of representatives.'" *BLET* 31 F.4th at 346 (emphasis added).

## III. Southwest's facial-versus-factual attack argument contradicts its own pleadings and evidence, the record below, and the district court's opinions

Southwest claims that the district court undertook a "facial" review in determining that it lacked jurisdiction. [Southwest Br. 36] Southwest further argues the district court "did not rely on any findings of fact in reaching its conclusion." (*Id.*) The record and Southwest's own briefing undercut Southwest's argument.

All agree that a facial attack—when the situation calls for it—"requires the court merely to look and see if plaintiff has sufficiently alleged a basis of subject

matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). But this situation called for a more deferential review under *Pickett*, and in any event, that is not how the district court approached SWAPA's pleadings.

Southwest misstates what happened below. First, the district court clearly did not undertake a facial review, as evidenced by the court's determination of disputed facts—despite also finding that the issues of jurisdiction and merit were intertwined. Second, Southwest's factual presentation and reliance upon self-serving and objectionable declarations from Southwest management witnesses reveals an effort to reframe SWAPA's pleadings in a light favorable to the company to resolve contested facts against Captain Roebling and the union. Given those considerations, the court erred in dismissing SWAPA's complaint on jurisdictional grounds.

## A.  The district court failed to take SWAPA's well-plead facts as true, and instead weighed and ignored the facts establishing jurisdiction

SWAPA's opening brief detailed numerous factual disputes amounting to a plausible union animus claim.  [See SWAPA Br. 25 – 27 and 41 - 51]  The brief also describes the ways in which the district court violated Rule 12(b)(6) and Rule 56—in other words, the ways in which the district court viewed SWAPA's allegations in isolation, viewed facts against SWAPA and in the company's favor, and ignored other allegations to resolve the jurisdictional question.  [*Id.*]

As one glaring example, the district court excused Southwest's flagrant anti-union policy forbidding Check Pilots from union participation. According to the district court, this was no evidence of anti-union animus because "the policy was retracted two years before Captain Roebling's CA Position was revoked." (ROA.659) But this ignored the broader circumstances of the company's response to SWAPA's organizing efforts and sweeps away the union animus merely because the company withdrew its published statement of an illegal policy. To appreciate how this weighs evidence, imagine an accused murderer. Sometime before the murder, the accused published a letter in a magazine stating he wanted the victim dead. The accused then retracted his threat due to public outcry in response to the original publication. Then, approximately two years later, the victim is killed. Suspicion surely would land on this hypothetical accused. The original publication surely would evidence the accused's *animus* and *intent*. For a district court to hold otherwise would usurp the role of the jury in determining intent and weighing the evidence of intent.

For another example, the court accepted Southwest's framing that Roebling was no longer active in the union after he left the Check Pilot committee. (ROA.659). The union alleged, however, that Roebling was known for his advocacy (ROA.54 FAC ¶31), that he was associated with union committee as a founding chairman (ROA..54 FAC ¶31-32), that his demotion was part of the broader company's efforts

against SWAPA's organizing (ROA.50 FAC ¶19-22), and that Roebling continued his protected activity through involvement in this lawsuit.[4]  (*See, e.g.,* ROA.1053 (Roebling's verification), ROA.425 (a fifteen page declaration by Roebling). All of this confronted the company's contention that Roebling's protected activity ended when he left the committee in December 2020. Of course, a retaliation claim could still exist even if the three-month passage of time were undisputed and there were no further protected activity. *See Gee v. Principi*, 289 F.3d 344, 347 (5th Cir. 2002)(noting a two-year passage of time); *Shirley v. Chrysler First, Inc.*, 970 F.2d 43 (5th Cir. 1992)(rejecting suggestion that a fourteen month passage of time between the initial EEOC charge and alleged retaliation was "legally conclusive proof against retaliation.").

## B.    Southwest mounts a factual attack relying on disputed facts to contest jurisdiction

Southwest's argument that the trial court conducted a "facial" review and properly accepted SWAPA's allegations is contradicted by Southwest's briefing to the district court and to this Court.  Southwest's "Statement of the Case" presents a hotly contested version of events.  From pages 3 – 10 of its brief, Southwest relies almost entirely on disputed testimony, often based on hearsay, in declarations of

---

[4]  The Record on Appeal contains 929 references to Roebling.

Southwest's interested witnesses rather than on SWAPA's allegations.[5]  Southwest cites the record at ROA.118-23 (Declaration of Southwest witness Chris Meehan), ROA.137-138 (Declaration of Southwest witness Carl Kuwitzky), and ROA.1000-1 (Additional declaration of Chris Meehan), to smear Roebling and justify his demotion (and later rejection from rehire to the Check Airman position).

Southwest then misstates the record to suggest that "SWAPA speculates that the above email's reference to Captain Roebling 'publicly stat[ing]' he did nothing to warrant removal of his Check Pilot qualifications refers to the filing of this lawsuit."  [Southwest Br. at 9 (citing ROA.677, ¶34)] The record cite is incorrect. The TAC instead states as non-speculative fact that *the only way* Roebling had "contested [the company's] determination," as Meehan references in the September 16, 2022 email, was "in this lawsuit that SWAPA filed and in which Roebling has had an active role as a key witness …." (ROA.689, ¶54) Roebling's active participation in SWAPA throughout 2021 "by and through his actions in this litigation, made him the further target of Southwest's anti-union animus and retaliation." (*Id.*) SWAPA provided evidentiary support for these concrete non-

---

[5] SWAPA explained to the district court that Southwest's arguments were entirely disputed facts, moved to strike portions of those disputed facts, and briefed the hearsay nature of those disputed facts.  SWAPA also filed contesting declarations. (See ROA.397, 402-04, 425-476 (declarations of Captain Roebling and Captain Murray), 477-481 (motion to strike), 531-538 (reply in support of motion to strike), and 1031 n.3.

speculative allegations. Captain Roebling verified this allegation. (ROA.708) Roebling's later declaration refuted Southwest's claims at length. (ROA.1056-58, Roebling dec. ¶14 – 17) Nevertheless, the trial court accepted Southwest's disputed self-serving explanation for Meehan's email and found it was no evidence of retaliation. (ROA.1234 ("The email does not reflect such anti-union animus as would alter the conclusion that the Court does not have subject matter jurisdiction.")) This was error. A factfinder could believe Meehan's denials—or not. *See Conrad v. Delta Airlines, Inc.*, 494 F.2d 914, 918 (7th Cir. 1974)(concluding that carrier's explanation for manager's seemingly hostile comment was a matter for the trier of fact).

Southwest also argues that the trial court was correct to discount the retaliatory timing of Roebling's demotion from Check Pilot because he voluntarily resigned from the Check Pilot Committee "months" before. (Southwest Br. 17, 36) As stated, the three month timing has sufficiently established a causal nexus in other retaliation cases. [SWAPA Brief 44-46]

Furthermore, anti-retaliation statutes protect *former* employees. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997)(Thomas, J.). In *Robinson*, Justice Thomas linked Title VII's anti-retaliation provisions to the NLRA's through a common purpose: "Maintaining unfettered access to statutory remedial mechanisms." *Id.* (internal quotations omitted). Thus, Justice Thomas wrote, the EEOC quite

persuasively maintains that it would be destructive of this purpose of the antiretaliation provision for an employer to be able to retaliate with impunity against an entire class of acts under Title VII--for example, complaints regarding discriminatory termination." *Id.* The RLA, like these other workplace protections, surely protects against retaliation to a similar extent and shares that common purpose. For the NLRA's standards and principles are "equally applicable in cases under the RLA." *Atchison*, 894 F.2d at 1466.

## IV.    Southwest ignores *Pickett* and cannot overcome the district court's conclusion that the jurisdiction and merit facts are intertwined

A central argument in SWAPA's motion for reconsideration below and in this appeal is that the district court applied the wrong standard of review under *Pickett*. For this is a case where jurisdictional facts are intertwined with merit facts, as the trial court found. (ROA.652)

Here, the trial court agreed that the jurisdictional analysis "is intertwined with the Rule 12(b)(6) analysis, because whether the Court has jurisdiction over minor disputes depends on whether SWAPA has plausibly alleged sufficient facts, including allegations of antiunion animus, so as to fall into a special circumstance exception as identified by the Fifth Circuit in *Atchison*." (ROA.652).   Southwest does not address the fact that the trial court made this statement in ruling on the motion to dismiss.   Meanwhile, SWAPA showed how it meets each prong of the test

from *Pickett v. Tex. Tech Univ. Health Scis. Ctr.*, 37 F.4th 1013, 1030 (5th Cir. 2022).

Instead, Southwest relies upon *Ramming v. United States*, 281 F.3d 158, (5th Cir. 2001). In *Ramming*, a bankruptcy debtor filed a tort claim against the United States. The central issue in *Ramming*, however, was a statute of limitations and the factual dispute resolved was when the person knew or should have known of his claims. *Id.* at 163. That is a customary legal determination. *Ramming* did not address *Pickett* or a question of intent, motive, or animus, which are customarily jury issues. Such "nebulous questions of motive and intent" are typically for the factfinder *See Thornbrough v. Columbus & G.R. Co.*, 760 F.2d 633, 641 (5th Cir. 1985), *disapproved on other grounds, St. Mary's Honor v. Hicks*, 509 U.S. 502, 513 (1993); *see also Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)("If satisfaction of an essential element of a claim for relief is at issue, however, the jury is the proper trier of contested facts.").

Furthermore, Southwest's argument that SWAPA must effectively *win* the case on the pleadings is contrary to *BLET*. In *BLET*, the Court noted the obvious point that "jurisdiction does not depend on the claim being successful" but only on whether it is "colorable." *BLET*, 31 F.4th at 346, n.7 (citing *Arbaugh*, 546 U.S. at 513).

**V.    Southwest's rhetoric is contrary to decades of labor law and the specific history of union animus cases**

Southwest accuses SWAPA of hyperbole, yet it is Southwest's brief that contains overblown rhetoric.

For example, Southwest makes a floodgates argument, stating that a "court should not be required to conduct a jury trial to determine whether it has jurisdiction in the first place."  To hold otherwise, Southwest predicts, "would burden the courts with RLA litigation that belongs in arbitration and would incentivize parties to make claims of anti-union discrimination in order to avoid the arbitration process." [Southwest Br. 19 and 40-41]   Although Southwest labels SWAPA's position "radical," SWAPA relies on decades of union animus precedent—under both the NLRA and RLA—and well-established law on pleading standards. The Supreme Court allows dismissal under Rule 12(b)(6) "only if the complaint fails to plead 'enough facts to state a claim to relief that is plausible on its face.'" *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible if it alleges facts allowing the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  There is nothing "radical" in SWAPA's pleading animus claims in detailed complaints under established precedent.

Southwest acts as though long-established pleading standards do not apply in RLA statutory claims. There is no RLA case (and Southwest has cited none) that

holds RLA pleadings to a heightened standard.   Rather, *Roscello v. Southwest Airlines Co.*, proceeded to trial and this Court said that there "seems to be no doubt that this claim, which rests not upon a collective bargaining contract, but upon a charge that Southwest violated the statute, was within the jurisdiction of the district court rather than an adjustment board." *Roscello v. Sw. Airlines Co.*, 726 F.2d 217, 220 n.2 (5th Cir. 1984).

In *Roscello*, this Court described the causation standard for an RLA anti-union animus claim as being a "substantial or motivating factor" standard wherein overt direct evidence of animus is not required. *Id*. at 223.   Southwest now argues that *Roscello* is "inapposite precedent" because it was a pre-certification case "which is governed by an entirely different standard than pos-certification claims…." [Southwest Br. 33 n.6]   Contrary to Southwest's argument, *Roscello* was post-certification.   Southwest terminated Roscello three days *after* recognizing a rival union. So, there was a union in place when the retaliation occurred (although the protected activity happened earlier). *Roscello*, 726 F.2d at 219.  More to the point, *Roscello* cited the Seventh Circuit favorably in a post-certification animus case. *See Roscello*, 726 F.2d at 222 (citing *Conrad v. Delta Airlines, Inc.*, 494 F.2d 914 (7th Cir. 1974)). *Conrad* was a post-certification wrongful discharge case using a mixed-motive causation standard.   In addition to being wrong about *Roscello*, Southwest also fails to explain what the causation standard *is* in an RLA anti-union animus

case, or how that causation standard makes the pleading standard (a showing of a plausible cause of action) higher.  Furthermore, Southwest's argument continues to disregard *BLET* and *Central of Georgia*, which are both post-certification cases.

Nor is Southwest's floodgates prediction borne out by history.  Lexis-Nexis reports only 14 cases in the Fifth Circuit—and only 51 overall—citing *Central of Georgia* since 1962.  Most of those are not RLA cases analyzing or applying *Central of Georgia* to union animus claims.  Similarly, since this Court decided *BLET* in 2022, only two cases in the Fifth Circuit have cited *BLET*: this case (at the district court level) and *Martinelli v. Hearst Newspapers. Martinelli v. Hearst Newspapers, L.L.C.*, 65 F.4th 231 (5th Cir. 2023).  *Martinelli* does not cite *BLET* for RLA purposes, but instead for the Fifth Circuit's rule of orderliness.  *Id.* at 234. There has been no flood of union animus claims in the 62 years since *Georgia Railway* was issued. There is no reason to think that correcting the district court's error here will unleash such a flood.  Indeed, "even supposing the [defendant's] worst predictions come true, that would be the result of the statute Congress drafted." *Muldrow v. City of St. Louis*, No. 22-193, slip op. at 10 (2024).[6]

---

[6] Yesterday's Supreme Court decision in *Muldrow*, like this Court's *en banc* decision in *Hamilton*, reaffirms that courts are to construe statutes according to their plain language rather than imposing extra-textual standards.  *Id.*; *Hamilton*, 79 F.4th at 502 (concluding that courts should "apply the statute as it is written ….").

Southwest further argues that SWAPA is attempting an "end-run" around the RLA's minor-dispute system and faults SWAPA for unnecessary delay. This is essentially the same argument rejected in *DeGracia*. *DeGracia*, 2016 U.S. Dist. LEXIS 164048, at *4-5 (N.D. Tex. 2016)("SWA maintains that DeGracia's claims are artfully pleaded to circumvent the procedures set forth in the RLA….") It bears repeating that Southwest attempted and lost similar RLA preclusion arguments in *Carmona*, and that Southwest's losing arguments caused significant delay there. Carmona filed suit against Southwest on August 14, 2006 claiming his termination violated the gender discrimination provisions of Title VII, the disability discrimination provisions of the ADA, and the FMLA. *Carmona v. Sw. Airlines Co.*, 604 F.3d 848, 853 (5th Cir. 2010). Southwest then filed a motion to dismiss and later a motion for summary judgment, arguing, among other things, that Carmona's claims were preempted by the RLA. *Carmona*, 536 F.3d at 346. On appeal, this Court later found (on July 16, 2008) that the RLA did not preclude Carmona's statutory claims. *Id.*

In *Carmona*, it was Southwest's attempt to shunt federal claims into private arbitration that added *years* to the case. The rhetorical argument that one party is employing delay tactics, is always in the eye of the beholder. Here too, Southwest's multiple motions to dismiss, which were granted in error by the district court, can be argued as unnecessary delay by Southwest, not SWAPA. SWAPA respectfully

requests that the Court focus on the legal merits rather than rhetorical barbs about delay.

## Conclusion

SWAPA urges this Court to reverse the trial court's orders. SWAPA also requests that this Court hold that SWAPA has plead plausible claims for anti-union animus and interference establishing the trial court's jurisdiction. Further, SWAPA requests that on remand the verified allegations and causes of action in each prior complaint be considered in their totality or, alternatively, that leave be given for SWAPA to file a Fourth Amended Complaint.

DATED:  April 18, 2024                  Respectfully submitted,

                                        Gillespie Sanford LLP
                                        4803 Gaston Avenue
                                        Dallas, Texas 75246
                                        Phone: (214) 800-5111

                                        _/s/ Joseph H. Gillespie_____
                                        Hal K. Gillespie (Attorney-in-Charge)
                                        Texas Bar No. 07925500
                                        hkg@gillespiesanford.com
                                        Joseph H. Gillespie
                                        Texas Bar No. 24036636
                                        joe@gillespiesanford.com
                                        James D. Sanford
                                        Texas Bar No. 24051289
                                        jim@gillespiesanford.com

                                        ATTORNEYS FOR PLAINTIFF-
                                        APPELLANT


## Certificate Of Service

I  hereby  certify  that  on  April  18,  2024  I  electronically  filed  Appellant

Southwest Airlines Pilots Association's Opening Brief with the Clerk of Court for

the  United  States  Court  of  Appeals  for  the  Fifth  Circuit  by  using  the  appellate

CM/ECF  system,  which  caused  a  copy  to  be  delivered  to  Defendant-Appellee

Southwest Airlines Company's counsel, who have all consented to receive service

via the Court's CM/ECF system.

                                        _/s/ Joseph H. Gillespie_____
                                        ATTORNEY FOR PLAINTIFF-
                                        APPELLANT

## **Certificate Of Compliance**

1.      This reply brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because it contains <u>5,935</u> words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

2.      This reply brief complies with the typeface requirements in FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because it uses a proportionally spaced typeface using Microsoft Word in Times New Roman, 14-point font for text, and 12-point font for footnotes.

3.      This reply brief complies with the privacy-redaction requirement of Fifth Circuit Rule 25.2.13. Personal identifiers are redacted in accordance with the rules.

4.      This reply brief complies with the electronic-submission requirement of Fifth Circuit Rule 25.2.1 because it is an exact copy of the paper document.


*/s/ Joseph H. Gillespie*
ATTORNEY FOR PLAINTIFF-
APPELLANT